**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **TAASERA LICENSING LLC,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 2:22-cv-00063-JRG-RSP** |
| **CHECK POINT SOFTWARE TECHNOLOGIES LTD.,** | |
| **Defendant.** | |

**DEFENDANT CHECK POINT SOFTWARE
TECHNOLOGIES LTD.'S MOTION TO TRANSFER VENUE
TO THE NORTHERN DISTRICT OF CALIFORNIA**

Defendant Check Point Software Technologies Ltd. ("Check Point") hereby moves to transfer this case from the Eastern District of Texas ("EDTX") to the Northern District of California ("NDCA") pursuant to 28 U.S.C. § 1404(a). This motion is based on the below brief, the attached declarations and exhibits, and any other argument or evidence that the Court may consider. Check Point requests an oral hearing.

## **TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................................... 1

II.    BACKGROUND ....................................................................................................... 2

    A.    The Technology Underlying Several Asserted Patents Was Developed, at Least in Part, in NDCA ................................................................................2

    B.    Several Third-Party Witnesses Are in NDCA ..............................................2

    C.    Check Point's US-Based Witnesses and Evidence Are in NDCA ........................3

    D.    Plaintiff Is Quest's Litigation Construct for Asserting Patent Litigation in EDTX ................................................................................................4

III.    LEGAL STANDARD ............................................................................................... 5

IV.    ARGUMENT ............................................................................................................ 6

    A.    This Action Could Have Been Filed in NDCA ...........................................6

    B.    NDCA Is "Clearly More Convenient" than EDTX .....................................6

        i.    The Private Interest Factors Heavily Favor Transfer ..................................6

        ii.    The Public Interest Factors Strongly Favor Transfer ..............................12

    C.    Plaintiff Was Recently Formed in EDTX for Litigation, and its Ephemeral Presence Is Entitled to No Weight .......................................................14

V.    CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adaptix, Inc. v. HTC Corp.*,
  937 F. Supp. 2d 867 (E.D. Tex. 2013) .......................................................................9

*In re Apple Inc.*,
  374 F. App'x 997 (Fed. Cir. 2010) .........................................................................15

*Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*,
  2015 WL 123852 (E.D. Tex. Jan. 7, 2015).............................................................11

*Blue Spike, LLC v. Clear Channel Broad., Inc.*,
  2014 WL 11619168 (E.D. Tex. July 2, 2014) ..........................................................9

*Corrino Holdings LLC v. Expedia, Inc.*,
  2022 WL 1094621 (W.D. Tex. Apr. 12, 2022)........................................................12

*DE Techs., Inc. v. E4X Inc.*,
  2011 WL 1113486 (E.D. Tex. Mar. 24, 2011) ..................................................11, 13

*In re DISH Network L.L.C.*,
  2021 WL 4911981 (Fed. Cir. Oct. 21, 2021)..........................................................11

*Fujitsu Ltd. v. Tellabs, Inc.*,
  639 F. Supp. 2d 761 (E.D. Tex. 2009)....................................................................13

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009)..............................................................6, 7, 9, 10

*Glob. Equity Mgmt. (SA) Pty. Ltd. v. Alibaba.com, Inc.*,
  2017 WL 1109865 (E.D. Tex. Mar. 24, 2017) ...............................................7, 9, 10

*In re Google Inc.*,
  2017 WL 977038 (Fed. Cir. Feb. 23, 2017) ............................................................10

*In re Hoffmann-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009)..........................................................................8, 13

*In re Juniper Networks, Inc.*,
  14 F.4th 1313 (Fed. Cir. 2021) ....................................................................6, 14, 15

*KlausTech, Inc. v. AdMob, Inc.*,
  2010 WL 11484498 (E.D. Tex. Nov. 30, 2010) ......................................................8

*Luminati Networks Ltd. v. BIScience Inc.*,
  2019 WL 2084426 (E.D. Tex. May 13, 2019) ..........................................................6

*In re Microsoft Corp.*,
    630 F.3d 1361 (Fed. Cir. 2011)..................................................................14, 15

*In re Nintendo Co.*,
    589 F.3d 1194 (Fed. Cir. 2009)..............................................................5, 6, 7, 13

*Oyster Optics, LLC v. Coriant Am., Inc.*,
    2017 WL 4225202 (E.D. Tex. Sept. 22, 2017) ...........................................9

*Realtime Data LLC v. Barracuda Networks Inc.*,
    2017 WL 4791970 (E.D. Tex. Oct. 24, 2017) ...........................................11

*In re Samsung Elecs. Co., Ltd.*,
    2 F.4th 1371 (Fed. Cir. 2021) ..........................................................12, 15

*Software Rts. Archive, LLC v. Google, Inc.*,
    2010 WL 2950351 (E.D. Tex. July 22, 2010) ...........................................12

*In re Toyota Motor Corp.*,
    747 F.3d 1338 (Fed. Cir. 2014)................................................... *passim*

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)..............................................5, 7, 12, 13

*Vertical Computer Sys., Inc. v. LG Elecs. MobileComm U.S.A., Inc.*,
    2013 WL 2241947 (E.D. Tex. May 21, 2013) ...........................................5

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ...............................................................12

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ........................................................5, 6, 7, 10

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
    2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ...........................................13

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010)..................................................................14, 15

**Statutes**

28 U.S.C. § 1391(c)(3)...................................................................................6

28 U.S.C. § 1404(a) ...................................................................................1, 5

28 U.S.C. § 1407 ...................................................................................11, 12

**Other Authorities**

Fed. R. Civ. P. 45(c) ...................................................................................9

**TABLE OF EXHIBITS**

| | |
|---|---|
| Ex. A | TaaSera.com as it appeared on Jan. 23, 2013 |
| Ex. B | TaaSera, Inc. LinkedIn |
| Ex. C | TaaSera, Inc. Twitter |
| Ex. D | Srinivas Kumar LinkedIn |
| Ex. E | USPTO Interview Summary re the '414 Patent |
| Ex. F | USPTO Interview Summary re the '616 Patent |
| Ex. G | Gurudatt Shashikumar Profile on Nuwber |
| Ex. H | Chart Showing Locations of Third-Party Prior Art Inventors |
| Ex. I | Annette Adler LinkedIn |
| Ex. J | Matthew Howard LinkedIn |
| Ex. K | Charles Knouse LinkedIn |
| Ex. L | Minoo Gupta LinkedIn |
| Ex. M | Huge Njemanze LinkedIn |
| Ex. N | Debabrata Dash LinkedIn |
| Ex. O | Shijie Wang LinkedIn |
| Ex. P | Bruce Wootton LinkedIn |
| Ex. Q | Kevin Mahaffey LinkedIn |
| Ex. R | Gregor Freund LinkedIn |
| Ex. S | Conrad Herrmann LinkedIn |
| Ex. T | Sindhu Murari LinkedIn |
| Ex. U | Quest Patent Research Corporation Form 10-K |
| Ex. V | Quest Patent Research Corporation Form 10-Q |
| Ex. W | Jon Scahill LinkedIn |
| Ex. X | Declarations of Jon Scahill |
| Ex. Y | Webpage titled "Our Portfolio" from Quest's Website |
| Ex. Z | Complaints Filed by Quest Subsidiaries |
| Ex. AA | Webpage titled "Acquisition of Taasera Portfolio Completed" from Quest's Website |
| Ex. BB | Taasera LLC's Certificate of Formation |
| Ex. CC | Taasera's Opp'n to § 1407 Centralization |
| Ex. DD | Google Search Results for "Taasera Licensing" |
| Ex. EE | Webpage titled "Taasera Portfolio" from Quest's Website |

| | |
|---|---|
| Ex. FF | Webpage titled "QPRC Portfolio Update" from Quest's Website |
| Ex. GG | WhoIs Lookup for Domain "TaaseraTrust.com" |
| Ex. HH | iCann Lookup for Domain "TaaseraTrust.com" |
| Ex. II | Google Maps Drive from Check Point's US Headquarters in San Carlos, CA to Federal Courthouse in San Francisco |
| Ex. JJ | Trend Micro Inc.'s § 1407 Motion for Centralization |
| Ex. KK | Flights from Tel Aviv to San Francisco |
| Ex. LL | Flights from Tel Aviv to Dallas |
| Ex. MM | Flights from Tel Aviv to Shreveport |
| Ex. NN | Check Point's Website |
| Ex. OO | Table C-5, U.S. District Courts—Median Time Intervals from Filing to Disposition of Civil Cases |

# I.      INTRODUCTION

Plaintiff Taasera Licensing LLC ("Plaintiff" or "Taasera") filed this case against Check Point Software Technologies, Ltd. ("Check Point") in EDTX, accusing six Check Point network and computer security products of infringing Plaintiff's patents. Yet neither Plaintiff nor Check Point has any meaningful connection with EDTX. Check Point is an Israeli corporation with its US headquarters in NDCA in San Carlos, California and has no meaningful presence in EDTX. None of the accused products were developed in this District, whereas several were at least partly developed in NDCA. Although registered in Marshall, Texas, Plaintiff is a recently formed and ephemeral entity, created by its New York parent corporation Quest Patent Research Corporation ("Quest") seemingly to support venue in EDTX for patent lawsuits. Indeed, Quest has registered at least 11 of its subsidiaries (including Plaintiff) at its local counsel's address in Marshall. Because Plaintiff is a recently formed, ephemeral entity, its witnesses and documents in Texas are entitled no weight in the transfer analysis. Regardless, it appears that Plaintiff does not have any employees in Texas, none of the inventors of the eight asserted patents reside here, and no technology underlying the patents was developed here. Check Point therefore seeks a transfer.

NDCA is clearly more convenient for this case. Check Point's relevant documents and employees are located in NDCA or in Israel. Several potential third-party witnesses are in NDCA, including inventors of the asserted patents and prior art inventors. No third-party witnesses appear to reside in EDTX. Plus, NDCA has a strong local interest in overseeing this case—Check Point's US headquarters is located there, at least three of the six accused products were developed there, and the technology underlying at least some of the asserted patents appears to have been developed, tested, and manufactured there. Because the relevant factors demonstrate that NDCA is a clearly more convenient venue than EDTX, Check Point respectfully requests transfer pursuant to 28 U.S.C. § 1404(a).

## II.        BACKGROUND

**A.      The Technology Underlying Several Asserted Patents Was Developed, at Least in Part, in NDCA**

Plaintiff accuses six Check Point products (the "Accused Products") of infringing eight asserted patents (the "Asserted Patents"[1]). (Dkt. 21 ("FAC") ¶¶ 7–14.) TaaSera, Inc., a seemingly defunct company previously headquartered in NDCA in Cupertino, CA, allegedly developed four of those patents. (*Id.* ¶ 18; Exs. A, B, C.) Those patents purport to relate to products which were developed and manufactured by TaaSera, Inc. when it was headquartered in NDCA. (*See* FAC ¶ 28 ("TaaSera, Inc. manufactured commercial and academic versions of its NetTrust Security Appliance.").) None of the other patents appear to have been developed in NDCA or EDTX.

**B.      Several Third-Party Witnesses Are in NDCA**

Several potential third-party witnesses are in NDCA. At least two named inventors of the Asserted Patents are in NDCA, including Srinivas Kumar, a co-inventor of three Asserted Patents, who lives in Mountain View, CA. (Ex. D; FAC ¶¶ 20, 22–23.) Mr. Kumar was also TaaSera Inc.'s Founder and CTO and was substantially involved in prosecution of several Asserted Patents. (Exs. D at 5, E, F.) Moreover, Gurudatt Shashikumar is a co-inventor of the '441 Patent and lives in San Mateo, CA. (FAC ¶ 20; Ex. G.)

Additionally, Check Point's initial invalidity analysis has revealed at least 12 third-party prior art inventors who reside in NDCA. (Exs. H, I, J, K, L, M, N, O, P, Q, R, S, T.) Moreover, two Accused Products were developed by Zone Labs Inc. ("Zone Labs"), a company acquired by Check Point in 2004. (Zegman Decl. ¶ 4.) Zone Labs was headquartered in San Francisco, and Zone Labs personnel and resources were integrated into Check Point's US headquarters, which was at that time in NDCA in Redwood City. (*Id.*) Because Zone Labs developed earlier versions

---

[1] The Asserted Patents are U.S. Pat. Nos. 6,842,796 ("'796 Patent"); 8,327,441 ("'441 Patent"); 8,955,038 ("'038 Patent"); 9,990,948 ("'948 Patent"); 9,092,616 ("'616 Patent"); 9,608,997 ("'997 Patent"); 9,923,918 ("'918 Patent"); and 9,071,518 ("'518 Patent"). (FAC ¶¶ 7–14.)

of two Accused Products before the priority dates of the Asserted Patents, Check Point anticipates that Zone Labs products and patents will constitute relevant prior art. Several relevant inventors of these patents and developers of these products still reside in NDCA, including Zone Labs' co-founder and CTO Conrad Herrmann and co-founder Gregor Freund, who are also inventors of relevant prior art. (*Id.*; Exs. H, R, S.)

### C.    Check Point's US-Based Witnesses and Evidence Are in NDCA

Check Point is an Israeli corporation based in Tel Aviv that develops and provides network and computer security products and services. (Zegman Decl. ¶ 2.) Check Point's "United States Corporate Headquarters" is in San Carlos, in NDCA. (Ex. NN; *see* Zegman Decl. ¶ 2.) Check Point has no facilities in EDTX.[2] (Zegman Decl. ¶ 6.)

Most if not all of Check Point's US-based, likely relevant witnesses are in NDCA. (*Id.* ¶¶ 5, 7.) Check Point's Chief Commercial Officer, Chief Marketing Officer, Head of Business Development (Americas), and their teams work out of the San Carlos office, and have potentially relevant knowledge regarding the marketing and sales of the Accused Products. (*Id.* ¶ 7.) Additionally, three Accused Products were developed in-part in San Carlos. (*Id.* ¶ 5.) Accordingly, several witnesses with relevant technical knowledge are in NDCA, including Check Point Technology Leaders Skyler King and Kaveh Baharestan, and Group Managers Gururaj Baikady and Sundeep Mudgal. (*Id.* ¶ 5.) Other relevant witnesses reside out of the country, primarily in Tel Aviv. (*Id.*) By contrast, Check Point is not aware of any relevant witnesses in EDTX. (*Id.* ¶¶ 5, 7.)

Check Point's relevant evidence (e.g., technical documents and documents relating to the finances, sales, licensing, advertising, and product development of the Accused Products) is located primarily in NDCA or Israel. (*Id.* ¶ 8.) Check Point's US headquarters in San Carlos is

---

[2] Though Check Point has a Technical Assistance Center in the *Northern* District of Texas in Irving, TX, this facility is primarily tasked with providing customer support, and was not involved in developing the Accused Products. (Zegman Decl. ¶ 6.)

home to the principal US-based development teams for the Accused Products. (*Id.*) Furthermore, as explained above, Zone Labs—a San Francisco company at the time it was acquired by Check Point—developed several of the Accused Products. (*Id.* ¶ 4.) Check Point is not aware of any relevant documents in EDTX. (*Id.* ¶ 8.)

### D.  Plaintiff Is Quest's Litigation Construct for Asserting Patent Litigation in EDTX

Quest, a Delaware corporation based in New York, is a non-practicing entity that acquires and assigns patents to its wholly owned subsidiaries for litigation. (Ex. U at 1, 8, 13, F-9.) "To date all of [Quest's] revenue . . . has resulted from litigation commenced by [Quest]." (*Id.* at 1.) Quest refers to itself and its subsidiaries as a single entity. (Ex. V at 5 ("As used herein, 'we', 'us', 'our', the 'Company' refer to Quest Patent Research Corporation and its wholly and majority-owned and controlled operating subsidiaries."); *id.* at ii (same); Ex. U at i (same).) Quest's "only full-time employee" is Jon Scahill, (Ex. U at 2), who appears to reside in Rye, New York, (Exs. W, X.) He also appears to be the only employee of each subsidiary, which Quest calls "portfolios." (Ex. Y.)

At least 11 of Quest's subsidiaries/portfolios (including Plaintiff) claim the same "principal place of business" at its local counsel's office (Truelove Law Firm) in Marshall. (FAC ¶ 1; *id.* at 72; Exs. Z, BB.) On May 20, 2021, Quest used a capital advance of $250,000 to acquire several of the Asserted Patents. (*Id.* at F-16.) "Quest CEO Jon Scahill commented, 'the Taasera portfolio is the second acquisition out of our recently announced $27m acquisition capital facility.'" (Ex. AA (internal quotations in original).) The patents were assigned to Plaintiff, formed as a Texas LLC just eight days earlier on May 12. (Exs. BB, AA.)

Plaintiff appears to have no employees, conduct no business, and have no function apart from being Quest's litigation construct. Plaintiff's Certificate of Formation states that Quest is its manager, (Ex. BB), but a recent filing by Plaintiff states that it is "managed by Tim Scahill . . . from his home in Germany," (Ex. CC at 2.) Plaintiff's online presence is merely a subpage of

Quest's website.[3] (Ex. AA ("You can find a list of the [patents] comprising the Taasera Portfolio on our new Taasera page."); Exs. DD, EE.) Quest announced this lawsuit on its website as a "Portfolio Update." (Ex. FF.) Plaintiff's primary counsel, Fabricant LLP—like Quest's only full-time employee, Jon Scahill—is based in Rye, New York. (Dkt. 1-1.)

### III.        LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a court may transfer a civil case to a more convenient district or division where it might have otherwise been brought. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*").

If the proposed venue is proper, courts weigh the private and public interest factors to determine whether "the transferee venue is a clearly more convenient venue." *In re Nintendo Co.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009). The public and private factors are:

> Private Factors: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.

> Public Factors: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). "[T]he Fifth Circuit forbids treating the plaintiff's choice of venue as a factor in the analysis." *Nintendo*, 589 F.3d at 1200. Rather, the plaintiff's choice of forum is accounted for by the defendant having the burden "to demonstrate that the transferee venue is a clearly more convenient venue." *Id.* Still, the transferee forum need not be "*far* more convenient." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed.

---

[3] Although Plaintiff recently created a separate website (TaaseraTrust.com) on March 14, 2022, this fact is irrelevant to the transfer analysis because it was created after this suit was filed. (Exs. GG, HH); *Vertical Computer Sys., Inc. v. LG Elecs. MobileComm U.S.A., Inc.*, 2013 WL 2241947, at *3 (E.D. Tex. May 21, 2013) ("precedent dictates that motions to transfer venue are not decided on a series of changing facts, but instead should be evaluated based on the situation which existed when suit was filed.") (citation omitted).

Cir. 2014) (emphasis in original). Importantly, "[t]he comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums." *Id.* at 1340; *see also Nintendo*, 589 F.3d at 1199 ("it is improper to consider the centralized location of [EDTX] when no identified witness resides in the district"). And "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1320 (Fed. Cir. 2021).

## IV.    ARGUMENT

This case should be transferred to NDCA because Check Point's US headquarters, witnesses, and evidence are in in NDCA, and neither party has any meaningful connection to EDTX. Good cause exists for transfer.

### A.    This Action Could Have Been Filed in NDCA

Venue is proper in NDCA. As a foreign corporation, Check Point is subject to suit in any judicial district for venue purposes. 28 U.S.C. § 1391(c)(3); *Luminati Networks Ltd. v. BIScience Inc.*, 2019 WL 2084426, at *7 (E.D. Tex. May 13, 2019).

### B.    NDCA Is "Clearly More Convenient" than EDTX

The private and public interest factors demonstrate that NDCA is "clearly more convenient" than EDTX. *Volkswagen II*, 545 F.3d at 315. As discussed below, nearly every relevant factor weighs heavily in favor of transferring this case to NDCA.

#### i.    The Private Interest Factors Heavily Favor Transfer

##### (1)    Access to Sources of Proof Heavily Favors Transfer

The relative ease of access to sources of proof heavily favors a transfer to NDCA. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation

omitted). In *Nintendo*, transfer to the Western District of Washington was "heavily" favored because it was the US headquarters of the foreign accused infringer (Nintendo), and "most evidence reside[d] in Washington or Japan with none in Texas." 589 F.3d at 1199–1200.

Here, this factor weighs heavily in favor of transfer because the "bulk of the relevant evidence" will come from Check Point's offices in NDCA and Israel. *Genentech*, 566 F.3d at 1345; (Zegman Decl. ¶ 8.) Check Point's NDCA headquarters is the principal US site of development of the Accused Products, and several Accused Products were originally developed by Zone Labs in NDCA before it was acquired by Check Point. (Zegman Decl. ¶¶ 4, 8.) Thus, evidence concerning design and development, marketing, and financial data are in NDCA. (*Id.* ¶ 8.) Like *Nintendo*, where transfer was "heavily" favored because Nintendo's evidence was in the transferee district or abroad, here, transfer is heavily favored because Check Point's relevant evidence is in NDCA or Israel. (*Id.*); *see Glob. Equity Mgmt. (SA) Pty. Ltd. v. Alibaba.com, Inc.*, 2017 WL 1109865, at *2 (E.D. Tex. Mar. 24, 2017) (finding transfer supported where the defendants' "physical evidence and witnesses [we]re all primarily located in [NDCA] or overseas."). Without question, "[k]eeping this case in [EDTX] [would] impose a significant and unnecessary burden on [Check Point] to transport documents that would not be incurred if the case were to proceed in [NDCA]."[4] *Genentech*, 566 F.3d at 1346.

By contrast, few if any relevant documents are likely to be found in EDTX. Check Point is not aware of any relevant Check Point documents there. (Zegman Decl. ¶ 8.) Although Check Point has a Technical Assistance Center in the *Northern* District of Texas focused on customer support, that office does not design or develop the Accused Products. (*Id.* ¶ 6.)

---

[4] Despite technology advances, physical accessibility to sources of proof remains an important private interest factor. *See Volkswagen II*, 545 F.3d at 316; *TS Tech*, 551 F.3d at 1321 (finding that district court erred in finding this factor neutral because most of the physical evidence was in the transferee venue even though many of the documents were stored electronically).

Finally, NDCA is likely no less convenient than EDTX for Plaintiff. Check Point has been unable to find any public information indicating that Plaintiff has any evidence or witnesses in EDTX. And in any case, Plaintiff is a recently formed, ephemeral subsidiary of its New York-based parent, Quest, and neither entity has any real connection to this forum. *See* § IV.C, *infra*; *KlausTech, Inc. v. AdMob, Inc.*, 2010 WL 11484498, at *2 (E.D. Tex. Nov. 30, 2010) (giving no weight to Texas-located documents where plaintiff's presence was "recent and ephemeral").

Indeed, it appears that all of Plaintiff's evidence and witnesses are outside EDTX. Some relevant Plaintiff-affiliated witnesses, such as certain co-inventors of the asserted patents, are actually *in NDCA*, plainly weighing in favor of transfer to that district. *See* § II.B, *supra*. Other witnesses and evidence are not in either EDTX or NDCA, meaning they do not affect the convenience analysis. *Toyota*, 747 F.3d at 1340. For example, Plaintiff's Certificate of Formation states that Quest (located in New York) is its manager, (Ex. BB), and Plaintiff's recent filing states that it is managed by an individual residing in Germany. (Ex. CC at 2.) Plaintiff was incorporated in EDTX less than a year before this suit was filed and listed its "principal place of business" as its local counsel's office (Truelove Law Firm)—the same location as ten other Quest subsidiaries. (FAC ¶ 1; *id.* at 72; Ex. Z.)

Thus, even if Plaintiff has relevant documentation in EDTX, it would be limited to documents transferred to its local counsel's office to bolster its venue position. Any such documents are a fiction and would not affect the analysis of convenience. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009) (disregarding transfer of 75,000 electronic pages of documents to local counsel in Texas in anticipation of litigation as "a fiction which appears to have been created to manipulate the propriety of venue.").

**(2)     The Availability of Compulsory Process to Secure the Attendance of Witnesses Strongly Favors Transfer**

The relative availability of compulsory process also favors transfer to NDCA because there are no relevant non-party witnesses in EDTX. "Th[is] factor weighs the heaviest in favor of transfer when a proposed venue is said to have absolute subpoena power," that is, "subpoena power to compel attendance at both depositions and trial." *Blue Spike, LLC v. Clear Channel Broad., Inc.*, 2014 WL 11619168, at *4 (E.D. Tex. July 2, 2014) (citation and internal quotations omitted). A court has absolute subpoena power to command a non-party to appear for trial or deposition in the state where the non-party lives if the command would not cause substantial expense. Fed. R. Civ. P. 45(c). Because there are no known potential witnesses in Texas, EDTX's subpoena power provides no benefit in this action.

By contrast, NDCA has usable subpoena power, which "weighs in favor of transfer, and not only slightly." *Genentech*, 566 F.3d at 1345; *see also Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874 (E.D. Tex. 2013). Indeed, *at least* 12 potentially relevant third-party witnesses reside in NDCA. (Ex. H.) These witnesses include Zone Labs' founders (Gregor Freund and Conrad Herrmann), who are also prior art inventors, and two former TaaSera, Inc. employees/founders (Srinivas Kumar and Gurudatt Shashikumar), who are co-inventors of several Asserted Patents. (Exs. D, G, S, T.) They constitute "an established pool of likely third-party witnesses" who are not subject to the subpoena power of EDTX, but can be compelled to attend trial in NDCA. *Oyster Optics, LLC v. Coriant Am., Inc.*, 2017 WL 4225202, at *6 (E.D. Tex. Sept. 22, 2017); *see Glob. Equity Mgmt.*, 2017 WL 1109865, at *2 (transfer to NDCA supported where defendants "identif[ied] at least two specific non-party prior artists who live or work within reach of [NDCA]'s subpoena power."). By contrast, Check Point is unaware of a single potentially relevant non-party witness in EDTX.

In sum, NDCA is a more convenient location for third-party witnesses and has the power to secure their participation. This factor therefore strongly favors transfer.

### (3) The Convenience for Willing Witnesses Heavily Favors Transfer

Considerations pertaining to the convenience of the witnesses also heavily favor a transfer. Indeed, this factor "is probably the single most important factor in a transfer analysis." *In re Google Inc.*, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017) (citation omitted).

Here, "[b]ecause a substantial number of material witnesses reside within the transferee venue and the state of California, and no witnesses reside within [EDTX] . . . this factor [] weigh[s] substantially in favor of transfer." *Genentech*, 566 F.3d at 1345. Attending trial in NDCA will be less burdensome for willing witnesses, especially for Check Point's California teams whose home district is NDCA. Indeed, Check Point's US headquarters is only 24 miles from the NDCA courthouse in San Francisco. (Ex. II.) Thus, transfer to NDCA minimizes both monetary costs and "the personal costs associated with being away from work, family, and community." *Volkswagen II*, 545 F.3d at 317. Plus, it will be much more convenient for out-of-state Check Point witnesses to continue their work from the San Carlos office than from Marshall. (Zegman Decl. ¶ 10.) As a result, the "costs" to the vast majority of witnesses "will be reduced if those witnesses attend trial in California." *Glob. Equity Mgmt.*, 2017 WL 1109865, at *2 (transfer supported where "physical evidence and witnesses [we]re all primarily located in [NDCA] or overseas."). Last, Check Point has no witnesses in EDTX, and witnesses outside both districts (e.g., in Israel) do not alter the analysis.[5] *Toyota*, 747 F.3d at 1340.

### (4) There Are No Practical Problems with Transferring this Case

Practical problems are those related to judicial economy. For example, transfer is favored

---

[5] In any case, it is substantially more convenient for Israeli witnesses to fly nonstop to San Francisco (~14.5 hours), than to fly to Dallas (no direct flights) and then drive to Marshall (~20 hours total), or to make two or more stops flying to Shreveport followed by a drive to Marshall (~22 hours total). (*See* Exs. KK, LL, MM.) A similar analysis applies for Tim Scahill in Germany.

when the transferee court already has familiarity with the case's factual issues or patents. *DE Techs., Inc. v. E4X Inc.*, 2011 WL 1113486, at *4 (E.D. Tex. Mar. 24, 2011).

Here, "[t]his factor is neutral" because transfer "will present no practical or case management problems, as this case is in its early stages." *Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, 2015 WL 123852, at *6–7 (E.D. Tex. Jan. 7, 2015) (holding case was in its "early stages" even though court had considered issues of associational standing, and discovery had commenced). Plaintiff has not even served preliminary infringement contentions, a scheduling order has not been entered, and discovery has not begun. While Plaintiff filed one other case in EDTX involving similar patents, No. 2:21-cv-441, that case is also in its early stages, and a § 1407 transfer motion to NDCA is pending before the Judicial Panel on Multidistrict Litigation. (Ex. JJ); *Toyota*, 747 F.3d at 1340–41 (finding transfer from EDTX to Michigan was warranted even though EDTX was "currently home to several other cases involving the patents at issue" but "one of those cases ha[d] settled and transfer motions [were] pending in others."). Plus, the Federal Circuit has "rejected as a general proposition that the mere co-pendency of infringement suits in a particular district automatically tips the balance in the non-movant's favor." *In re DISH Network L.L.C.*, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021). For example, in *Realtime Data LLC v. Barracuda Networks Inc.*, 2017 WL 4791970, at *4–5 (E.D. Tex. Oct. 24, 2017), transfer was warranted even though *eight* cases were pending on the same or related patents, multiple *Markmans* had been held, and three patents had been tried, because, "[s]imply put, where [the defendant] has shown [NDCA] is a clearly more convenient forum, the considerations of judicial economy do not override that showing to warrant a denial of transfer."

Additionally, here, Plaintiff's two EDTX cases involve different companies and different products. *See Dish Network*, 2021 WL 4911981, at *4 (finding that co-pending suits against different defendants with different products will "likely [] involve significantly different discovery and evidence"). Plaintiff itself has taken the position that "**The Products Do Not Overlap**" and

that there is "*no* evidence" that the different accused products operate in a similar manner. (Ex. CC at 9–10 (emphases in original).) Regarding overlapping invalidity or infringement issues, "the Multidistrict Litigation Procedures exist to effectuate this sort of efficiency," *Samsung*, 2 F.4th at 1380, and, as noted, a § 1407 transfer motion is pending. (Ex. JJ.)

### ii.    The Public Interest Factors Strongly Favor Transfer

### (1)    NDCA Has a Strong Local Interest in this Case and EDTX Has None

The interest in having localized interests decided at home also favors transferring this case to NDCA. Under this factor, courts analyze the factual connection that a case has with the transferee and transferor venues. *See TS Tech*, 551 F.3d at 1321. Interests that could apply to any judicial district or division are disregarded in favor of particularized local interests. *Id.* This factor "weigh[s] heavily in favor of" transferring a case from a district that lacks "any meaningful connection or relationship with the circumstances" of the case, to a district where the plaintiffs and defendants live and the alleged wrong had occurred. *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004).

The same analysis applies here, and this factor weighs heavily in favor of transfer. EDTX is not home to Check Point or Taasera.[6] The inventors of the Asserted Patents do not live here. The Accused Products were not developed, designed, or manufactured here. Although Check Point's products may end up here, "[t]he Fifth Circuit has unequivocally rejected the argument that citizens of the venue chosen by the plaintiff have a 'substantial interest' in adjudicating a case locally because some allegedly infringing products found their way into the Texas market."

---

[6] Plaintiff's registration as a Texas LLC does not create a local interest because it was recently formed for the purpose of litigation and is ephemeral. *Software Rts. Archive, LLC v. Google, Inc.*, 2010 WL 2950351, at *5 (E.D. Tex. July 22, 2010) ("[T]he Federal Circuit has specifically held that establishing a principal place of business in this district shortly before filing suit does not create a local interest."); *Corrino Holdings LLC v. Expedia, Inc.*, 2022 WL 1094621, at *5 (W.D. Tex. Apr. 12, 2022) ("little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation.")

*Nintendo*, 589 F.3d at 1198. Where accused products are distributed throughout the United States, "the citizens of the venue chosen by the plaintiff have no more or less of a meaningful connection to the case than any other venue." *Id.* (internal quotations and citations omitted). Neither this district nor its potential jurors have any relevant local interest in a New York entity's patent-infringement claims against an Israeli company with a California U.S. headquarters.

By contrast, NDCA has a strong connection to this action. Check Point's U.S. headquarters is in NDCA and that is where three of the Accused Products were developed. (Zegman Decl. ¶ 5); *see Wireless Recognition Techs. LLC v. A9.com, Inc.*, 2012 WL 506669, at *6 (E.D. Tex. Feb. 15, 2012) (finding residents of NDCA had a particularized interest where defendants were headquartered and developed allegedly infringing products in the district); *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 769 (E.D. Tex. 2009) (same). Check Point employs approximately 175 NDCA residents whose work and reputation may be called into question. (Zegman Decl. ¶ 2); *Hoffman-La Roche*, 587 F.3d at 1336 (transferee district's interest is strong where the cause of action questions the work and reputation of locals who conduct business in community). The technology underlying four Asserted Patents was allegedly developed and manufactured in NDCA. (FAC ¶¶ 18, 28; Exs. A, B, C); *DE Techs.*, 2011 WL 1113486, at *5 ("[T]he [transferee district] has a local interest because the plaintiff . . . developed the technology there. This factor favors transfer."); *LoganTree*, 2022 WL 1491097, at *8 (same).

### (2)     The Remaining Public Interest Factors Are Neutral

The remaining public interest factors are neutral and do not affect the analysis. The time to disposition is about the same for both districts. (Ex. OO.) Both districts "are capable of applying patent law to infringement claims." *TS Tech*, 551 F.3d at 1320. Further, there is no possibility that a California court will be called upon to interpret Texas law, nor are there any conflict of laws issues. Thus, the remaining public interest factors are neutral.

**C.     Plaintiff Was Recently Formed in EDTX for Litigation, and its Ephemeral Presence Is Entitled to No Weight**

As explained above, it appears Plaintiff has no witnesses or documents in EDTX and no meaningful connection to the forum. However, even if Plaintiff could show *some* presence in EDTX, it should be afforded little to no weight in evaluating convenience because Plaintiff is a recently formed, ephemeral entity, contrived for the purpose of filing suits in EDTX.

The Federal Circuit has repeatedly held that "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *Juniper*, 14 F.4th at 1320; *see In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) ("The Supreme Court has long urged courts to ensure that the purposes of jurisdiction and venue laws are not frustrated by a party's attempt at manipulation. . . . [Thus, a] court [need not] honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient."). For example, the plaintiff in *Zimmer* had "no presence that should be given weight in the transfer analysis" because it had no employees in Texas, it shared an office with another of its counsel's clients, and it moved relevant documents to that office in anticipation of litigation. *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010). In *Juniper*, a plaintiff's Texas status was "not entitled to significant weight" because its office was "established only a few months before the complaints [] were filed," "the activities of the office [were] largely tied to bringing lawsuits," "only two employees [] work[ed] from Waco," and plaintiff's "principal officers [were] located in California." 14 F.4th at 1320.

Here, for the same reasons, Plaintiff's documents and witnesses in EDTX (if any) are entitled no weight. Plaintiff was formed just six months before filing against Trend Micro Inc., No. 2:21-cv-441 (E.D. Tex. Nov. 30, 2021), and just ten months before filing this suit. *See Juniper*, 14 F.4th at 1320. Plaintiff does not conduct any relevant business in Texas. Its "office" is "largely

tied to bringing lawsuits" as it is literally the office of its local counsel. *Id.* Plaintiff has no employees in EDTX, and its officers are in New York and Germany. *See id.*; *Zimmer*, 609 F.3d at 1381. Plaintiff is merely an extension of Quest, a New York company with no meaningful connection to EDTX. Thus, it appears Quest formed Plaintiff in EDTX to fabricate a venue connection. Quest registered Plaintiff at the same address as its local counsel and at least ten other Quest subsidiaries. (Exs. Z, BB.) Surely there is no legitimate business reason that a New York-based patent licensing firm that just raised $27 million would need an empty storefront in its local counsel's office in Marshall if not for the exclusive purpose of filing lawsuits. *See In re Apple Inc.*, 374 F. App'x 997, 999 (Fed. Cir. 2010) (giving no weight to status as Texas corporation where corporation had no employees, and its office was the office of its Texas litigation counsel). Like *Zimmer*, "[t]his is a classic case where the plaintiff is attempting to game the system by artificially seeking to establish venue by sharing office space with another of the trial counsel's clients." *Zimmer*, 609 F.3d at 1381. Put simply, Plaintiff "appear[s] to exist for no other purpose than to manipulate venue." *Microsoft*, 630 F.3d at 1365; *see In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1378 (Fed. Cir. 2021) (same).

## V.      CONCLUSION

Check Point respectfully requests that the Court transfer this action to NDCA.

Respectfully submitted,

Dated: July 11, 2022              */s/ Eric H. Findlay*
                                  Eric H. Findlay
                                  Texas State Bar No. 00789886
                                  FINDLAY CRAFT PC
                                  102 N College Ave, Ste. 900
                                  Tyler, TX 75702
                                  (903) 534-1100
                                  (903) 534-1137
                                  efindlay@findlaycraft.com

Alyssa Caridis
acaridis@orrick.com
Jake O'Neal
jake.oneal@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 S Figueroa St, Ste 3200
Los Angeles, CA 90017
(650) 614-7497

Clement Seth Roberts
croberts@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard St
San Francisco, CA 94105
(415) 773-5700

Evan Brewer
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Rd
Menlo Park, CA 94025
(650) 614-7497

*Attorneys for Defendant Check Point Software Technologies Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have appeared in this case are being served on July 11, 2022 with a copy of the foregoing via the Court's CM/ECF system.

/s/ Eric H. Findlay
Eric H. Findlay

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Check Point has complied with the meet and confer requirement in Local Rule CV-7(h). Counsel for Check Point conferred with counsel for Taasera on July 7, 2022. Counsel for Taasera indicated that they are opposed to the request sought herein.

/s/ Eric H. Findlay
Eric H. Findlay