# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| **TAASERA LICENSING LLC,** | |
| **Plaintiff,** | |
| v. | **Case No. 2:22-cv-63-JRG-RSP** |
| **CHECK POINT SOFTWARE TECHNOLOGIES LTD.,** | |
| **Defendant.** | |

## DEFENDANT CHECK POINT SOFTWARE TECHNOLOGIES LTD.'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S FIRST AMENDED COMPLAINT

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    PROCEDURAL BACKGROUND........................................................................ 2

III.   OVERVIEW OF INDUCED INFRINGEMENT ALLEGATIONS ................................. 3

IV.   LEGAL STANDARD........................................................................................... 5

V.    ARGUMENT ....................................................................................................... 5

    A.    Plaintiff Fails to Adequately Plead Induced Infringement. ....................................5

        i.    All Counts Fail to Adequately Allege Knowledge. ...................................6

               (1)    The Induced Infringement Allegations of Counts 1, 3, 6, and 7 Must be Limited to Post-Suit Conduct....................................6

               (2)    Counts 2, 4, 5, and 8 Fail to Adequately Allege Knowledge Based on Product Marking.................................................6

        ii.    All Counts Fail to Adequately Allege Specific Intent. ...............................7

               (1)    Plaintiff's Specific Intent Allegations Fail Because Check Point Had No Knowledge of the Patents When They Supposedly Induced Others to Infringe. .........................................8

               (2)    Plaintiff Asserts No Facts Regarding How Check Point's Documentation Induces Infringement.............................................9

               (3)    Plaintiff Insufficiently Alleges Willful Blindness as a Substitute for Specific Intent. .......................................12

    B.    The Court Should Dismiss Plaintiff's Induced Infringement Claims with Prejudice. ......................................................................13

VI.   CONCLUSION................................................................................................... 13

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Addiction & Detoxification Inst. LLC v. Carpenter*,
    620 F. App'x 934 (Fed. Cir. 2015) ...................................................................13

*Am. Vehicular Scis. LLC v. Mercedes-Benz U.S. Int'l, Inc.*,
    No. 6:13-cv-307 (E.D. Tex. Feb. 7, 2014), Dkt. 77 ...........................................9, 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................................................................................5

*Bench Walk Lighting LLC v. LG Innotek Co.*,
    530 F. Supp. 3d 468 (D. Del. 2021) .....................................................................10

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
    2015 WL 5000397 (E.D. Tex. June 3, 2015) ...............................................5, 10, 11

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
    No. 6:14-cv-751-JRG-JDL, (E.D. Tex. Sept. 10, 2014), Dkt. 1 ...........................11

*Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*,
    2018 WL 6629709 (D. Del. Dec. 19, 2018) .........................................................11

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006) ......................................................................5, 6, 8

*Ethernet Innovations, LLC v. Cirrus Logic, Inc.*,
    2013 WL 8482270 (E.D. Tex. Mar. 6, 2013) ......................................................9, 11

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) ...........................................................................................5, 12

*Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prod., Inc.*,
    2021 WL 4555802 (W.D. Tex. Oct. 4, 2021) ...............................................7, 12, 13

*Lippert Components Mfg., Inc. v. MOR/ryde, Inc.*,
    2018 WL 345767 (N.D. Ind. Jan. 10, 2018) ...........................................................7

*Manville Sales Corp. v. Paramount Sys., Inc.*,
    917 F.2d 544 (Fed. Cir. 1990) ................................................................................5

*Memory Integrity, LLC v. Intel Corp.*,
    144 F. Supp. 3d 1185 (D. Or. 2015) .....................................................................10

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster*,
   545 U.S. 913 (2005) .................................................................................................10

*Radware, Ltd. v. A10 Networks, Inc.*,
   2013 WL 5373305 (N.D. Cal. Sept. 24, 2013) ........................................................7

*Tegal Corp. v. Tokyo Electron Co.*,
   248 F.3d 1376 (Fed. Cir. 2001) ................................................................................8

*Tierra Intellectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*,
   2014 WL 894805 (E.D. Tex. Mar. 4, 2014) ............................................................8

*Wininger v. Bank of Am., N.A.*,
   621 F. App'x 297 (5th Cir. 2015) ...........................................................................13

**Statutes**

35 U.S.C. § 271(b) ..............................................................................................................8

35 U.S.C. § 287 .......................................................................................................2, 3, 4, 7

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ......................................................................................................1

## I.     INTRODUCTION

On July 5, 2022, Taasera Licensing LLC ("Plaintiff" or "Taasera") filed a first amended complaint (Dkt. 21 ("FAC")) against Check Point Software Technologies Ltd. ("Check Point"), alleging direct and induced infringement[1] of eight patents (the "Asserted Patents"[2]) against six Check Point Products. Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court should dismiss Plaintiff's claims of induced infringement with prejudice as the allegations are facially deficient and cannot be cured.

Plaintiff's induced infringement claims are deficient because the FAC fails to adequately allege that Check Point has requisite knowledge of the Asserted Patents. For Counts 1, 3, 6, and 7, Plaintiff does not allege *any* facts regarding pre-suit knowledge. Plaintiff alleges only that Check Point learned of the Asserted Patents from the original complaint. Accordingly, Plaintiff's motion to dismiss pre-suit induced infringement for these counts is warranted. For Counts 2, 4, 5, and 8, Plaintiff alleges that Check Point has knowledge of these patents based only on Plaintiff's legal conclusion that Check Point and its predecessor entities and assignees of four of the Asserted Patents complied with the patent marking statute. Even were it true that Plaintiff or its predecessors marked some products for some patents, these allegations fail as a matter of law. Marking can only supply *constructive* knowledge of patents in the context of damages—it cannot supply *actual* knowledge for induced infringement.

Plaintiff's induced infringement claims are also deficient because they fail to adequately allege specific intent to induce infringement. *First*, Plaintiff *cannot* allege specific intent here because specific intent requires the infringer to take *affirmative steps* to induce infringement *after*

---

[1] Plaintiff does not allege contributory infringement.

[2] The Asserted Patents are U.S. Patent Nos. 6,842,796 ("'796 Patent"); 8,327,441 ("'441 Patent"); 8,955,038 ("'038 Patent"); 9,990,948 ("'948 Patent"); 9,092,616 ("'616 Patent"); 9,608,997 ("'997 Patent"); 9,923,918 ("'918 Patent"); and 9,071,518 ("'518 Patent").

learning of the existence of the patents. For example, even if it were sufficient to allege knowledge of the patents based on the filing of the original complaint (Plaintiff's only theory for Counts 1, 3, 6 and 7), Plaintiff does not and cannot identify any post-suit affirmative steps taken by Check Point to induce infringement, because the distribution of the alleged product manuals and "documentation" (which allegedly induce infringement) pre-dates this lawsuit. Put another way, when Check Point created and made available this documentation, Check Point was unaware of the Asserted Patents.

*Second*, while Plaintiff generically alleges that Check Point provides "product manuals and documentation," Plaintiff fails to allege any facts identifying *how* such materials might direct customers to use the Accused Products in an infringing manner—and, in many cases, Plaintiff fails even to identify specific "manuals" or "documentation." This is not enough.

And *third*, as a substitute for specific intent, Plaintiff alleges that Check Point was "willfully blind," but merely states that legal conclusion without pleading any facts in support. Again, not enough.

Accordingly, Check Point respectfully requests dismissal of all induced infringement claims for all the Asserted Patents with prejudice.

## II.     PROCEDURAL BACKGROUND

On February 25, 2022, Plaintiff filed a complaint (Dkt. 1) against Check Point, alleging direct and induced infringement of seven patents against five Check Point products. On June 21, 2022, Check Point filed a motion to dismiss claims of induced infringement because: (1) Plaintiff pleaded zero facts supporting its allegation that Check Point purportedly specifically intended for its customers to infringe the Asserted Patents; and because (2) Plaintiff pleaded no facts to show that Check Point had pre-suit knowledge of infringement. Dkt. 13. On July 5, 2022, Plaintiff filed the FAC, which asserted a new patent and added thread bare allegations that Check Point provides

its customers with product manuals, and that prior assignees of four of the Asserted Patents complied with the patent marking statute. Dkt. 21.

### III.     OVERVIEW OF INDUCED INFRINGEMENT ALLEGATIONS

**Count 1, '796 Patent**. Plaintiff alleges that Check Point knew of the '796 Patent "at least as of the date of the original Complaint" and that "Defendant provides product manuals and documentation that instruct customers and end-users how to use the Accused Products, including specifically how to use the Data Loss Prevention module." FAC ¶ 37.

**Count 2, '441 Patent**. Plaintiff alleges that Check Point knew of the '441 Patent "since prior to the filing of this lawsuit" because "[u]pon information and belief, Taasera and prior assignees of the '441 Patent, prior assignees' affiliates, and prior assignees' sublicensees to the '441 Patent, complied with the marking statute 35 U.S.C. § 287." FAC ¶ 47. Plaintiff also alleges that "Defendant provides product manuals and documentation that instruct customers and end-users how to use the Accused Products, including specifically how to use forensic reports and navigate the Sandblast Agent user interface." *Id.* ¶ 48.

**Count 3, '038 Patent**. Plaintiff alleges that Check Point knew of the '038 Patent "at least as of the date of the original Complaint" and that "Defendant provides product manuals and documentation that instruct customers and end-users how to use the Accused Products, including specifically how to use restricted access and remediation policies." *Id.* ¶ 63.

**Count 4, '948 Patent**. Plaintiff alleges that Check Point knew of the '948 Patent "since prior to the filing of this lawsuit" because "[u]pon information and belief, Taasera and prior assignees of the '948 Patent, prior assignees' affiliates, and prior assignees' sublicensees to the '948 Patent, complied with the marking statute 35 U.S.C. § 287." FAC ¶ 75. Plaintiff also alleges that "Defendant provides product manuals and documentation that instruct customers and end-users how to use the Accused Products, including specifically how to use forensic reports and navigate the Sandblast Agent user interface." *Id.* ¶ 76.

**Count 5, '616 Patent**. Plaintiff alleges that Check Point knew of the '616 Patent "since prior to the filing of this lawsuit" because "[u]pon information and belief, Taasera and prior assignees of the '616 Patent, prior assignees' affiliates, and prior assignees' sublicensees to the '616 Patent, complied with the marking statute 35 U.S.C. § 287." FAC ¶ 91. Plaintiff also alleges that "Defendant provides product manuals and documentation that instruct customers and end-users how to use the Accused Products, including specifically how to use endpoint security client components." *Id.* ¶ 92.

**Count 6, '997 Patent**. Plaintiff alleges that Check Point knew of the '997 Patent "at least as of the date of the original Complaint" and that "Defendant provides product manuals and documentation that instruct customers and end-users how to use the Accused Products, including specifically how to use restricted access and remediation policies." *Id.* ¶ 107.

**Count 7, '918 Patent**. Plaintiff alleges that Check Point knew of the '918 Patent "at least as of the date of the original Complaint" and that "Defendant provides product manuals and documentation that instruct customers and end-users how to use the Accused Products, including specifically how to use restricted policies." *Id.* ¶ 121.

**Count 8, '518 Patent**. Plaintiff alleges that Check Point knew of the '518 Patent "since prior to the filing of this lawsuit" because "[u]pon information and belief, Taasera and prior assignees of the '518 Patent, prior assignees' affiliates, and prior assignees' sublicensees to the '518 Patent, complied with the marking statute 35 U.S.C. § 287." FAC ¶ 134. Plaintiff also alleges that "Defendant provides product manuals and documentation that instruct customers and end-users how to use the Accused Products, including specifically how to create a conditional access policy." *Id.* ¶ 135.

The above allegations also include URL links to Check Point documentation, but in many cases these links appear to be non-functional and do not actually lead to a publicly-accessible file. *Id.* ¶¶ 48, 92, 121, 135.

4

## IV.     LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is not met unless the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## V.     ARGUMENT

### A.     Plaintiff Fails to Adequately Plead Induced Infringement.

"In order to survive a motion to dismiss, the complaint must: 1) adequately plead direct infringement by defendant's customers; 2) contain facts plausibly showing that defendant specifically intended for its customers to infringe the asserted patents; and 3) contain facts plausibly showing that defendant knew that the customer's acts constituted infringement." *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 2015 WL 5000397, at *4 (E.D. Tex. June 3, 2015), report and recommendation adopted, 2015 WL 13885437 (E.D. Tex. July 15, 2015). The knowledge element requires both "knowledge of the existence of the patent that is infringed" and "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765–66 (2011). To meet the specific intent element, "the alleged infringer must be shown to have *knowingly* induced infringement, not merely knowingly induced the *acts* that constitute direct infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (emphases in original) (cleaned up); *see Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990) ("It must be established that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts

alleged to constitute inducement."). Put another way, it is not enough that an accused inducer merely intends others to perform certain acts which are ultimately found to infringe. *See DSU Med. Corp.*, 471 F.3d at 1306. Rather, the defendant must intend that someone else infringe.

As detailed below, the FAC fails to adequately plead both knowledge and intent.

### i.     All Counts Fail to Adequately Allege Knowledge.

The Court should dismiss all claims of induced infringement because the FAC fails to adequately allege knowledge. *First*, the induced infringement claims in Counts 1, 3, 6, and 7 should be dismissed to the extent they contain allegations of pre-suit induced infringement because the FAC fails to allege pre-suit knowledge of the subject patents. *Second*, the induced infringement claims in Counts 2, 4, 5, and 8 should be dismissed for failing to adequately allege *any* knowledge (pre- or post-suit), because the knowledge-related allegations are comprised *solely* of legal conclusions regarding alleged compliance with the patent marking statute and contain no supporting facts.

### (1)     The Induced Infringement Allegations of Counts 1, 3, 6, and 7 Must be Limited to Post-Suit Conduct

Counts 1, 3, 6, and 7 fail to allege pre-suit knowledge—accordingly, at a bare minimum, the Court should dismiss pre-suit induced infringement for these counts. FAC ¶¶ 37, 63, 107, 121.

### (2)     Counts 2, 4, 5, and 8 Fail to Adequately Allege Knowledge Based on Product Marking.

The Court should dismiss—in their entirety—the induced infringement claims in Counts 2, 4, 5, and 8 because those counts do not contain any legally sufficient allegations regarding Check Point's knowledge of the Asserted Patents.  Instead, the allegations contain legal conclusions about compliance with the patent marking statute and contain no facts that sufficiently support induced infringement. Even were it true that Plaintiff or its predecessors marked some products for some patents, marking does not supply knowledge for induced infringement as a matter of law. These claims should therefore be dismissed.

Allegations of compliance with § 287 are *not* allegations of fact and do not suffice to allege knowledge for induced infringement. *Lippert Components Mfg., Inc. v. MOR/ryde, Inc.*, 2018 WL 345767, at *2 n.2 (N.D. Ind. Jan. 10, 2018) ("[Plaintiff] argues that the complaint's allegation that [plaintiff] complied with the patent marking requirements of 35 U.S.C. § 287(a) provides factual support for its allegation that [defendant] had knowledge of the patents-in-suit, but while marking may satisfy the notice requirement for damages, alleging marking doesn't allow the court to infer a defendant's knowledge of the patent-in-suit.") (citing *Radware, Ltd. v. A10 Networks, Inc.*, 2013 WL 5373305, at *2 (N.D. Cal. Sept. 24, 2013) (holding that patent marking provides *constructive knowledge* for damages but such allegations are insufficient to meet the *actual knowledge* standard for induced infringement); *Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prod., Inc.*, 2021 WL 4555802, at *2 (W.D. Tex. Oct. 4, 2021) (dismissing induced infringement claims where the "FAC merely recited: 'Defendant has been willfully blind to its infringement [] by, for example, ignoring the patent markings on both [plaintiff's] practicing products and its literature.'"). "Plaintiff invites this Court to hold, in effect, that so long as a Complaint pleads [] compliance with the marking statute, [] a Defendant without actual knowledge has been willfully blind to the existence of the asserted patents." *Kirsch*, 2021 WL 4555802, at *2. As with other courts that have confronted this issue, the Court should decline this invitation.

Thus, the Court should dismiss all claims of induced infringement in Counts 2, 4, 5, and 8.

**ii.      All Counts Fail to Adequately Allege Specific Intent.**

Plaintiff's induced infringement claims are also deficient because the FAC fails to adequately allege specific intent to induce infringement for three reasons. *First*, the acts evincing alleged specific intent occurred *before* Check Point had knowledge of the Asserted Patents. *Second*, the allegations are too conclusory or vague to support specific intent. And *third*, Plaintiff attempts to side-step specific intent by relying on legally insufficient allegations of willful blindness.

**(1)** **Plaintiff's Specific Intent Allegations Fail Because Check Point Had No Knowledge of the Patents When They Supposedly Induced Others to Infringe.**

Plaintiff simply *cannot* plead facts supporting the allegation that Check Point specifically intended to induce infringement because Check Point did not have knowledge of the Asserted Patents when it allegedly took acts that brought about infringement. In other words, when Check Point created and provided the product manuals and "documentation" that Plaintiff identifies in the FAC, Check Point could not have specifically intended to induce infringement because it did not know of the Asserted Patents.

Induced infringement requires specific intent to cause infringement. *DSU Med.*, 471 F.3d at 1306. Specific intent requires showing (or at the pleading stage, alleging) "culpable conduct, directed to encouraging another's infringement." *Id.* Thus, to establish that a defendant specifically intended to cause infringement, a plaintiff must allege (and then prove) "the taking of *affirmative steps* to bring about the *desired* result"—that is, infringement. *Tierra Intellectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*, 2014 WL 894805, at *4 (E.D. Tex. Mar. 4, 2014) (dismissing induced infringement claims) (emphases added); *see* 35 U.S.C. § 271(b) ("Whoever *actively* induces infringement [] shall be liable") (emphasis added). Acts of omission, *e.g.*, remaining silent when faced with evidence of infringing activities, do not suffice to impose infringement liability. *Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1379 (Fed. Cir. 2001) ("mere inaction d[oes] not constitute inducement"). And of course, if the "desired result" is infringement, specific intent to induce such infringement "necessarily includes the requirement that [the accused infringer] knew of the patent." *DSU Med.*, 471 F.3d at 1304.

Here, Plaintiff cannot plead Check Point specifically intended to cause infringement. As explained above, at best, the FAC alleges that Check Point had knowledge of some asserted patents

no earlier than the filing of the Complaint.[3] But even were the Court to find Plaintiff's allegations that Check Point provides manuals and "documentation" sufficient to plausibly allege affirmative acts that induce infringement by customers and users, these manuals and "documentation" all pre-date this lawsuit—and thus pre-date Check Point's knowledge of these patents. And because the FAC contains no allegation that Check Point had knowledge of the Asserted Patents when it took the alleged "affirmative acts" of providing user manuals and documentation, Check Point cannot have specifically intended, through those acts, to bring about infringement. Put another way, how can Check Point have "desired" to bring about infringement of patents of which it had no knowledge?

The inescapable conclusion here is that Plaintiff has not (and cannot) point to any affirmative steps taken by Check Point *after Check Point learned of these patents* that support a claim of induced infringement. Because Plaintiff has now twice failed to adequately allege claims of induced infringement, those claims should be dismissed, with prejudice.

### (2)   Plaintiff Asserts No Facts Regarding How Check Point's Documentation Induces Infringement.

The Court should also dismiss all claims of induced infringement because the FAC alleges generic statements that Check Point provides customers with "product manuals and documentation," but fails to explain how those documents direct customers to use the accused products in an infringing manner. *See Ethernet Innovations, LLC v. Cirrus Logic, Inc.*, 2013 WL 8482270, at *4 (E.D. Tex. Mar. 6, 2013) (dismissing inducement claims because merely alleging that the defendant supplied infringing systems and provided instructions to its customers did not create a reasonable inference of specific intent to induce infringement); *Am. Vehicular Scis. LLC v. Mercedes-Benz U.S. Int'l, Inc.*, No. 6:13-cv-307 (E.D. Tex. Feb. 7, 2014), Dkt. 77 at 6 (same);

---

[3] Because the FAC completely fails to sufficiently plead any knowledge of the other Asserted Patents, it follows that Plaintiff's allegations of specific intent similarly fail.

*Bench Walk Lighting LLC v. LG Innotek Co.*, 530 F. Supp. 3d 468, 490 (D. Del. 2021) ("the FAC's text includes no discussion of the content of those technical manuals or data sheets that show *how* Defendants instruct these third parties to infringe.") (emphasis in original).

Indeed, in each of the eight counts of the FAC, Plaintiff fails to allege *how* Check Point documentation directs customers or users to use Check Point products to infringe. *See* FAC ¶¶ 37, 48, 63, 76, 92, 121, 135. Rather, Plaintiff simply points to various URLs, some of which link to Check Point documents providing basic information about Check Point products (*e.g.*, in product information sheets), and some of which are non-operative URLs that do not link to publicly-accessible files. *See, e.g.*, FAC ¶ 48. Nowhere does the FAC allege how any of this documentation "direct[s] customers to use [its] products in an infringing manner." *Core Wireless*, 2015 WL 5000397, at *4; *see* FAC ¶¶ 37, 48, 63, 76, 92, 121, 135. Thus, at most, the allegations "only establish that [Check Point] described features of [its] products"; they do *not* establish that the documents instruct end-users "on how to engage in infringing uses that the customers would not otherwise engage in by simply buying the products." *Memory Integrity, LLC v. Intel Corp.*, 144 F. Supp. 3d 1185, 1196 (D. Or. 2015). Such allegations merely "evince 'ordinary acts incident to product distribution' rather than 'purposeful, culpable expression and conduct.'" *Id.* (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster*, 545 U.S. 913, 937 (2005)).

Moreover, as noted, a number of the allegations of specific intent to induce infringement in the FAC rely on broken URL links that do not lead to publicly-accessible documentation. FAC ¶¶ 48, 92, 121, 135. This on its own is sufficient to merit dismissal of those claims, as the Court and the public are left unable even to "see what Plaintiff is talking about." *Bench Walk*, 530 F. Supp. 3d at 490 (dismissing induced infringement claims for which the Plaintiff had provided broken web links because such claims provide "insufficient notice about what it is [defendant] did that amounts to encouragement of infringement.").

Even for the links that *do* work, the allegations are insufficient. For example, Count 1 cites a 193-page "Data Loss Prevention Administration Guide." But there is no explanation at all as to how that Guide instructs infringing use. Such vague allegations regarding a large document do not provide adequate notice to Check Point or cross the threshold from possible to plausible. *See Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, 2018 WL 6629709, at *4 (D. Del. Dec. 19, 2018) (dismissing induced infringement allegations where the plaintiff did "not identify any particular statement or material that plausibly suggest[ed] Defendants intend[ed] to induce infringement of the Patents-in-Suit. The Court has visited the website and is unable to find any instruction, direction or encouragement that would reasonably support such an inference.").

Plaintiff's deficient allegations directly parallel the deficient allegations in *Core Wireless*, *Ethernet Innovations*, and *American Vehicular Services*. In each case, the court held that similar allegations to documentation which generally directed users how to use the product did *not* establish *how* the documentation instructed end-users to engage in infringing uses. For example, in *Core Wireless*, the plaintiff alleged:

> Apple's affirmative acts of selling Apple's Accused Products, causing Apple's Accused Products to be manufactured and distributed, and providing instructive materials and information concerning operation and use of Apple's Accused Products induced third parties to make or use Apple's Accused Products in their normal and customary way to infringe the [] patent's claims.

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-cv-751 (E.D. Tex. Sept. 10, 2014), Dkt. 1 ¶ 18; *see also id.* ¶¶ 27, 36, 45, 54, 63 (same). Here, in Count 1 for example, Plaintiff alleges:

> Defendant provides product manuals and documentation that instruct customers and end-users how to use the Accused Products, including specifically how to use the Data Loss Prevention module.

FAC ¶ 37. The allegation, "including specifically how to use the Data Loss Prevention Module," *id.*, establishes only that Check Point provides documentation which instruct users how to operate the "Data Loss Prevent Module" "in [its] normal and customary way," *Core Wireless*, 6:14-cv-751, Dkt. 1 ¶ 18, and is therefore deficient.

What's more, when Plaintiff alleges that Check Point documentation "include[es] specifically how to use the Data Loss Prevention Module," it is unclear how this previously unmentioned and undefined "Data Loss Prevention Module" even relates to the "'796 Accused Products." (*See* FAC ¶¶ 32–37.) "[T]he "Data Loss Prevention Module" is not one of the "'796 Accused Products." (*Id.* ¶ 32.) And while Plaintiff alleges that the "'796 Accused Products" incorporate a "Data Loss Prevention *feature*," it is unclear what connection, if any, this "feature" has to the undefined "Data Prevention Module" referenced in the FAC, and therefore cannot support a claim of specific intent to induce infringement of that patent for this separate reason.

In short, Plaintiff's allegations of specific intent are facially deficient.

### (3)   Plaintiff Insufficiently Alleges Willful Blindness as a Substitute for Specific Intent.

Finally, Plaintiff unsuccessfully attempts to allege willful blindness as a substitute for specific intent. The FAC alleges that: "Defendant has induced infringement . . . with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe [the patent], but while remaining willfully blind to the infringement." *See* FAC ¶¶ 38, 49, 64, 77, 93, 108, 122, and 136. This is not sufficient to state a claim for induced infringement based on willful blindness.

"A showing of willful blindness requires that '(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact.'" *Kirsch*, 2021 WL 4555802, at *1 (quoting *Global-Tech*, 563 U.S. at 769). "A plaintiff who relies on willful blindness to plead knowledge *must identify in its complaint affirmative actions* taken by the defendant to avoid gaining actual knowledge of the patent to escape dismissal." *Kirsch*, 2021 WL 4555802, at *2 (emphasis added) (citation omitted).

Here, Plaintiff's allegations of willful blindness are wholly insufficient because Plaintiff states a legal conclusion without any supporting facts. Indeed, Plaintiff does not plead a single

affirmative act allegedly taken by Check Point to avoid gaining knowledge. *See id.* (dismissing induced infringement claims where the complaint "merely recited: 'Defendant has been willfully blind to its infringement [] by, for example, ignoring the patent markings on both [plaintiff's] practicing products and its literature.'"). By pleading *zero* facts, Plaintiff fails even to approach the required showing. *Addiction & Detoxification Inst. LLC v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015) ("Simply repeating the legal conclusion that Defendants induced infringement [] does not plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (internal quotes and citation omitted). Plaintiff's allegations of willful blindness are deficient.

***

Accordingly, the Court should dismiss all claims of induced infringement with prejudice for insufficiently alleging specific intent.

**B.      The Court Should Dismiss Plaintiff's Induced Infringement Claims with Prejudice.**

Plaintiff has twice now demonstrated that it cannot adequately allege induced infringement. Its product marking theory is insufficient as a matter law to show that Check Point had actual knowledge of the Asserted Patents, meaning Plaintiff can only allege knowledge as of the date of the original complaint. At best, even if alleging knowledge based on the original complaint were permissible, Plaintiff still cannot allege affirmative acts to induce infringement which took place post-suit. Alleging additional facts cannot cure these deficiencies and so leave to amend would be futile. The induced infringement claims should be dismissed with prejudice. *See Wininger v. Bank of Am., N.A.*, 621 F. App'x 297, 298 (5th Cir. 2015) (affirming dismissal with prejudice of first amended complaint because a "second amended complaint would have been futile").

**VI.      CONCLUSION**

For the foregoing reasons, Check Point respectfully requests that the Court dismiss all claims of induced infringement with prejudice.

13

Respectfully submitted,

Dated: July 19, 2022

*/s/ Eric H. Findlay*

Eric H. Findlay
Texas State Bar No. 00789886
Debby Gunter
Texas State Bar No. 24012752
FINDLAY CRAFT, P.C.
102 N College Ave, Ste 900
Tyler, TX 75702
(903) 534-1100
(903) 534-1137
efindlay@findlaycraft.com
dgunter@findlaycraft.com

Alyssa Caridis
acaridis@orrick.com
Jake O'Neal
jake.oneal@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 S Figueroa St, Ste 3200
Los Angeles, CA 90017
(650) 614-7497

Clement Seth Roberts
croberts@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard St
San Francisco, CA 94105
(415) 773-5700

Evan Brewer
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Rd
Menlo Park, CA 94025
(650) 614-7497

*Attorneys for Defendant Check Point Software Technologies Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have appeared in this case are being served

with a copy of the foregoing via the Court's CM/ECF system on July 19, 2022.

*/s/ Eric H. Findlay*

Eric H. Findlay
