**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| TAASERA LICENSING LLC,<br><br>         Plaintiff,<br><br>   v.<br><br>CHECK POINT SOFTWARE TECHNOLOGIES LTD.,<br><br>         Defendant. | Case No. 2:22-cv-00063-JRG-RSP |

**DEFENDANT CHECK POINT SOFTWARE TECHNOLOGIES LTD.'S REPLY IN
SUPPORT OF MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S FIRST
AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I. The Court Should Dismiss the Claims of Pre-Suit Induced Infringement in Counts 1, 3, 6, and 7 Because Taasera Does Not Allege Pre-Suit Knowledge............................... 1

II. Taasera Cannot Rely on its Alleged Compliance with the Patent Marking Statute to Show that Check Point Knew of the Asserted Patents. ....................................................... 1

III. Plaintiff Cannot Identify Any Affirmative Act to Induce Infringement After Check Point Learned of the Patents from the Original Complaint. ............................................... 3

IV. Plaintiff Still Fails to Point to a Single Instance Where Check Point Documentation Instructs Users to Infringe................................................................................................ 4

V. Plaintiff Does Not Address the Inadequacy of its Willful Blindness Allegations. .............. 5

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*3D Sys., Inc. v. Formlabs, Inc.*,
   2014 WL 1904365 (S.D.N.Y. May 12, 2014) ..................................................................2

*Aladdin Temp-Rite, LLC v. Carlisle Foodservice Prod., Inc.*,
   2014 WL 12775193 (M.D. Tenn. July 2, 2014) ................................................................2

*Bench Walk Lighting LLC v. LG Innotek Co.*,
   530 F. Supp. 3d 468 (D. Del. 2021) ..................................................................................5

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
   2015 WL 5000397 (E.D. Tex. June 3, 2015) ....................................................................4

*Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prod., Inc.*,
   2021 WL 4555802 (W.D. Tex. Oct. 4, 2021) ...................................................................2

*Longhorn Vaccines & Diagnostics, LLC v. Spectrum Sols. LLC*,
   564 F. Supp. 3d 1126 (D. Utah 2021) ...........................................................................1, 2

*Lutron Elecs. Co. v. Crestron Elecs., Inc.*,
   970 F. Supp. 2d 1229 (D. Utah 2013) ...............................................................................2

*Memory Integrity, LLC v. Intel Corp.*,
   144 F. Supp. 3d 1185 (D. Or. 2015) .................................................................................5

*Novatel Wireless, Inc. v. Franklin Wireless Corp.*,
   2012 WL 12845615 (S.D. Cal. July 19, 2012) .................................................................2

*Radware, Ltd. v. A10 Networks, Inc.*,
   2013 WL 5373305 (N.D. Cal. Sept. 24, 2013) .................................................................2

*Tierra Intellectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*,
   2014 WL 894805 (E.D. Tex. Mar. 4, 2014) ..................................................................3, 4

*Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*,
   2012 WL 202664 (S.D. Cal. Jan. 23, 2012) ......................................................................2

Nothing in Plaintiff's opposition salvages the induced infringement allegations in the first amended complaint. The Court should dismiss them with prejudice.

I.   **The Court Should Dismiss the Claims of Pre-Suit Induced Infringement in Counts 1, 3, 6, and 7 Because Taasera Does Not Allege Pre-Suit Knowledge.**

Plaintiff does not dispute that an accused infringer cannot specifically intend to induce infringement until *after* the accused infringer has knowledge of the asserted patents. *See* Dkt. 26 ("Mot.") at 7–9; Dkt. 31 ("Opp'n") at 5–6. Because the FAC does not allege that Check Point had pre-suit knowledge of the asserted patents, the Court should dismiss the claims of *pre-suit induced* infringement in Counts 1, 3, 6 and 7. *See* Dkt. 21 ("FAC") ¶¶ 37, 63, 107, 121.

II.   **Taasera Cannot Rely on its Alleged Compliance with the Patent Marking Statute to Show that Check Point Knew of the Asserted Patents.**

Plaintiff argues it can allege that Check Point had knowledge of the asserted patents *solely* by pleading that it complied with the patent marketing statute. *See* Opp'n at 6–7. Specifically, in Counts 2, 4, 5, and 8, it alleges on "information and belief" that it and its predecessors complied with the marking statute. FAC ¶¶ 47, 75, 91, 134. But this allegation does not help Taasera.

In the first place, *compliance* with the marking statute does not require *actually marking* products. Because a company need only mark embodying products, a company would "comply" with the marking statute even if it did not mark products—*e.g.*, because none of its products embody the asserted patents. Similarly, for asserted method claims (like for the '948 patent, which contains *only* method claims), Taasera would have "complied" with the marking statute even if it never marked any products. Against this background, it is notable that Taasera does not allege that *any* products were ever *actually* marked with any of the patent numbers. Thus, Taasera's assertion that it complied with the statute provides no factual support for the proposition that Check Point knew about the asserted patents.

Even when products have actually been marked, that fact, standing alone, "provide[s] little, if any support for the claim that [a defendant] ha[s] pre-filing knowledge." *Longhorn Vaccines & Diagnostics, LLC v. Spectrum Sols. LLC*, 564 F. Supp. 3d 1126, 1136 (D. Utah 2021) (collecting

1

cases). "Although courts have found patent markings supportive of such an inference in some cases, they have generally done so *only when* plaintiffs alleged *additional facts* indicating that the alleged infringer had knowledge of the patents or at least knew of, or had access to, the products bearing the relevant patent markings." *Id*. (emphases added); *see also Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prod., Inc.*, 2021 WL 4555802, at *2 (W.D. Tex. Oct. 4, 2021) (finding marking alone insufficient). Courts require these "additional facts" because an accused infringer must *actually* know of the patents to be liable for induced infringement—*constructive* knowledge is insufficient. *Radware, Ltd. v. A10 Networks, Inc.*, 2013 WL 5373305, at *2 (N.D. Cal. Sept. 24, 2013). In this case, however, Taasera has not pleaded that any products have been marked, much less the kind of additional facts it would need to show that Check Point had actual knowledge.

The cases cited by Taasera do not help its position. For example, in *3D Sys., Inc. v. Formlabs, Inc.*, 2014 WL 1904365, at *3 (S.D.N.Y. May 12, 2014), the plaintiff alleged that: (1) the parties were competitors; (2) industry publications disclosed outstanding patents covering plaintiff's printers; (3) an industry publication explained that plaintiff owned patents in the field; and (4) the defendant explained that the expiration of competitors' patents brought down the cost of its 3D printers. *Id*. "These allegations, *taken together*, support[ed] an inference of knowledge of the patents-in-suit" because they provided the kind of "additional facts" which showed that the defendants knew of and had access to marked products. *Id.* (emphasis added).[1]

In an effort to shore up its argument, Plaintiff argues its allegations are sufficient because Plaintiff and Check Point are competitors. Opp'n at 6. But the FAC does not allege that the parties are competitors. And even if it did, this would not help because Taasera has not alleged that any

---

[1] *See also Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 2012 WL 202664, at *4 (S.D. Cal. Jan. 23, 2012) (defendant received letter describing the asserted patents); *Lutron Elecs. Co. v. Crestron Elecs., Inc.*, 970 F. Supp. 2d 1229, 1237–38 (D. Utah 2013) (defendant was aware of plaintiff's products from emails, two industry publications reported on asserted patent, and parties were competitors); *Aladdin Temp-Rite, LLC v. Carlisle Foodservice Prod., Inc.*, 2014 WL 12775193, at *3 (M.D. Tenn. July 2, 2014) (defendant did not dispute it had actual knowledge); *Novatel Wireless, Inc. v. Franklin Wireless Corp.*, 2012 WL 12845615, at *2–3 (S.D. Cal. July 19, 2012) (website listed patents covering products and parties were competitors).

2

competitive products were ever marked with the asserted patent numbers, or that Check Point ever had any other reason to know of Taasera's patents. Thus, the Court should, at a minimum, dismiss Taasera's claims of *pre-suit induced* infringement for Counts 2, 4, 5, and 8.[2]

### III. Plaintiff Cannot Identify Any Affirmative Act to Induce Infringement After Check Point Learned of the Patents from the Original Complaint.

*All* of Taasera's induced infringement claims should also be dismissed in their entirety because Plaintiff has not and cannot point to any "affirmative step" that Check Point allegedly took to induce infringement after it learned of the patents from the original complaint. *Tierra Intellectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*, 2014 WL 894805, at *3–6 (E.D. Tex. Mar. 4, 2014) (mere knowledge of patent is insufficient to state a claim for induced infringement).

In its opposition, Plaintiff claims the affirmative act is that product manuals "were being actively distributed at the time of the Complaint through Check Point's website and continue to be distributed now." Opp'n at 8. But this language is not in the FAC. And even were it, it wouldn't be sufficient because the continued *existence* of the manuals on a website where they can be viewed and copied is not an *affirmative* step. *Tierra*, 2014 WL 894805, at *6 ("[Defendant] simply continued its business as usual. It did not highlight the instruction in the User Guide to customers or advertise the [] infringing features; in fact, literally no change in [defendant's] behavior is alleged. It is clear to the Court that failure to change behavior in light of a new fact cannot be characterized as an affirmative step"). Nor could Taasera fix the problem by further amending to point to the acts of creating and uploading the manuals, because those acts predated the original complaint—and thus predated Check Point's knowledge of the asserted patents.

Moreover, there is a fundamental illogicality with Taasera's approach. Insofar as a plaintiff wants to allege that a defendant's specific intent can be inferred by its failure to act (*e.g.*, to remove statements that allegedly induce infringement), the defendant should—at a minimum—have a

---

[2] Check Point did not learn of the '518 patent until the FAC, when it was first alleged as Count 8. Thus, claims of induced infringement which pre-date the FAC should be dismissed for this count.

3

reasonable opportunity to remove the supposedly incriminating statements before that inference is made. *See id.* Here, of course, Check Point has not had such an opportunity because Taasera has not even identified the statements that supposedly induce infringement. Put differently, Check Point's failure to remove statements *that have never been identified* cannot give rise to a reasonable inference that Check Point *specifically intended* for those statements to induce third parties to infringe. Yet, that is essentially the inference Taasera asks this Court to adopt.

Because Plaintiff cannot allege affirmative acts taken by Check Point *after* it learned of the asserted patents, all claims of induced infringement should be dismissed with prejudice.

### IV. Plaintiff Still Fails to Point to a Single Instance Where Check Point Documentation Instructs Users to Infringe.

The Court should also dismiss all claims of induced infringement for the independent reason that Plaintiff has not identified a single way in which the cited product manuals instruct users to infringe. *See* Opp'n at 7–8. Instead, Plaintiff contends that its conclusory allegations that Check Point provides product manuals are sufficient. *Id.* at 7.[3] This is wrong. *See* Mot. at 9–10; *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 2015 WL 5000397, at *4 (E.D. Tex. June 3, 2015) ("generic allegations that an alleged infringer provides instructional materials along with the accused products, without more, are insufficient").[4]

Plaintiff also points to Count 1 and claims that the FAC "alleges that Check Point infringes by . . . encouraging the use of its Check Point Data Loss Software Prevention Blade." Opp'n at 7–8. But this is not accurate, and irrelevant. It is inaccurate because the statement (i) refers to the continuing distribution of product documentation, and (ii) does not mention the Data Loss

---

[3] Plaintiff cites *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 905 (Fed. Cir. 2014), but this case applied a different standard in a different context (whether a case or controversy supported subject matter jurisdiction), and thus does not control the question of the sufficiency of Taasera's indirect infringement allegations in the FAC.

[4] Plaintiff notes that *Core Wireless* was decided before Form 18 was abrogated, but this actually *supports* dismissal here. The *Core Wireless* allegations—which directly parallel the allegations in this case (*see* Mot. at 11)—were insufficient *even under the lower pleading standard of Form 18*. Thus, here, the same allegations must be insufficient under the higher Iqbal/Twombly standard.

4

Software Prevention Blade.[5] And it is irrelevant because encouraging the use of a product as a whole (as distinct from encouraging the use of a specifically accused feature) does not constitute inducement. *Memory Integrity, LLC v. Intel Corp.*, 144 F. Supp. 3d 1185, 1196 (D. Or. 2015) ("[T]he mere allegation that a user following the instructions may end up using the device in an infringing way is not sufficient factual support"). And, as discussed previously, Check Point's *continued* distribution of product documentation on its website *after* it learned about the patents in suit does not constitute an affirmative act or demonstrate specific intent.

Plaintiff concludes that, like Count 1, the "FAC provides analogous factual allegations for each Count." Opp'n at 8. But these statements fail for the exact same reasons discussed above—*i.e.*, the continued distribution of generalized product manuals isn't an affirmative act and doesn't provide specific intent.[6]

In sum, Plaintiff has repeatedly failed to explain how the cited documentation (even for the links that work) induce infringement. Plaintiff has shown it cannot cure this deficiency. The Court should dismiss all induced infringement allegations with prejudice.

**V.      Plaintiff Does Not Address the Inadequacy of its Willful Blindness Allegations.**

Plaintiff fails to address and thus concedes the deficiency of its willful blindness allegations as a substitute for specific intent. The Court should dismiss these allegations with prejudice.

\*\*\*

---

[5] Instead, they refer to a "Data Loss Prevention module" which may (or may not) be an attempt to refer to the similarly named accused product. *See* Mot. at 12.

[6] Plus, Plaintiff ignores the broken links which supposedly support specific intent in each of Counts 2, 5, 7, 8, making those allegations even less plausible Count 1. *See* FAC ¶¶ 48, 92, 121, 135; *Bench Walk Lighting LLC v. LG Innotek Co.*, 530 F. Supp. 3d 468, 490 (D. Del. 2021) (broken links to product manuals are insufficient to show how a defendant encouraged infringement).

For the foregoing reasons, Check Point respectfully requests that the Court dismiss all claims of induced infringement with prejudice.

Respectfully submitted,

Dated: August 9, 2022

*/s/ Eric H. Findlay*
Eric H. Findlay
efindlay@findlaycraft.com
FINDLAY CRAFT PC
102 N College Ave, Ste 900
Tyler, TX 75702
(903) 534-1100
(903) 534-1137

Alyssa Caridis
acaridis@orrick.com
Jake O'Neal
jake.oneal@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 S Figueroa St, Ste 3200
Los Angeles, CA 90017
(650) 614-7497

Clement Seth Roberts
croberts@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard St
San Francisco, CA 94105
(415) 773-5700

Evan Brewer
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Rd
Menlo Park, CA 94025
(650) 614-7497

***Attorneys for Defendant Check Point Software Technologies Ltd.***

## CERTIFICATE OF SERVICE

      I hereby certify that all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system on August 9, 2022.

                                                            */s/ Eric H. Findlay*
                                                           Eric H. Findlay